IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Senior Judge Wiley Y. Daniel**

Civil Action No.   13-cv-00986-WYD

DEBRA D. TERRELL,

 Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

 Defendant.

# ORDER

 THIS MATTER is before the Court on review of the Commissioner's decision that denied Plaintiff's application for supplemental security income ["SSI"].  For the reasons stated below, this case is reversed and remanded to the Commissioner for further fact finding.

I. <u>BACKGROUND</u>

 In early 2010, Plaintiff protectively filed her application for SSI with an alleged onset date of disability of July 1, 2001.  (ECF No. 13, Administrative Record ["AR"] 134-40.)  Plaintiff was 38 years old when she applied for benefits in 2010.  (*Id.* 44.)  Following the initial administrative denial on January 21, 2011 (AR 97-100), Plaintiff requested a hearing before an Administrative Law Judge ["ALJ"].  (*Id.*)  The hearing was held on October 31, 2011 before ALJ K. Kwon.  (*Id.* 38-82.)  The ALJ issued an unfavorable decision dated December 30, 2011.  (*Id.* 19-37.)

In the sequential evaluation process required by law, the ALJ found at step one that Plaintiff has not engaged in substantial gainful activity since February 18, 2010. (AR 24.)  At step two, the ALJ found that Plaintiff has the following severe impairments: rheumatoid arthritis, degenerative disc disease of the lumbar spine, lupus, personality disorder, and depressive disorder.  (*Id.*)  At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments.

The ALJ then addressed Plaintiff's residual functional capacity ["RFC"], finding that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. § 416.967(b) except she requires jobs that allow a sit/stand option.  (AR 26.)  Additionally, Plaintiff is restricted from climbing ladders, ropes, and scaffolds, and is to avoid high production work such as work on a conveyor belt or similar high production assembly work.  (*Id.*)

At step four, the ALJ found that Plaintiff is not capable of performing past relevant work as a product assembler, cashier and warehouse worker.  (AR 31.)
At step five, the ALJ relied on vocational expert testimony in finding that Plaintiff could perform other work existing in significant numbers in the national economy.  (*Id.* 31-32). This included work as a photocopying - machine operator (DOT No. 207.685-014) and counter clerk - photo finishing (DOT No. 249.366-010).  (*Id.* 32.)  Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act.  (*Id.*)

The Appeals Council denied Plaintiff's request for review of the ALJ's decision (AR 1-8), making the ALJ's decision the Commissioner's final decision.  *See* 20 C.F.R. § 422.210(a).  Plaintiff timely requested judicial review, and this appeal followed.

Plaintiff argues that the ALJ's final decision is in contradiction to the substantial evidence in the record, as the ALJ failed to properly evaluate her severe impairments, treating source opinions, listings of impairments, RFC, and credibility. As a result, Plaintiff argues that the Commissioner improperly denied her disability benefits, and requests that the ALJ's decision be reversed for payment of benefits or remanded for a new hearing.

II.  ANALYSIS

A.  Standard of Review

A Court's review of the determination that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence. *Hamilton v. Sec. of Health and Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990). "It requires more than a scintilla of evidence but less than a preponderance of the evidence." *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988).

"Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). However, the court "must 'exercise common sense' in reviewing an ALJ's decision and must not 'insist on technical perfection.'" *Jones v. Colvin*, 514

F. App'x 813, 823 (10th Cir. 2013) (quoting *Keyes–Zachary v. Astrue*, 695 F.3d 1156, 1166 (2012)).

The ALJ's decision must be evaluated "based solely on the reasons given stated in the decision." *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004). A post-hoc rationale is improper because it usurps the agency's function of weighing and balancing the evidence in the first instance. *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008). Thus, I will not consider post-hoc arguments of the Commissioner.

    B.    <u>The Merits of Plaintiff's Arguments</u>

        1.    <u>The Weighing of the Medical Evidence at Step Three and in Connection with the RFC</u>

I first find that the ALJ erred at step three of the analysis and in the weighing of the medical evidence, which impacted the RFC and subsequent steps of the analysis. I further find that these errors were not harmless. "'At step three, the ALJ determines whether the claimant's impairment is equivalent to one of a number of listed impairments that the [Commissioner] acknowledges as so severe as to preclude substantial gainful activity.'" *Drapeau v. Massanari*, 255 F.3d 1211, 1212 (10th Cir. 2001) (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir.1996) (further quotation omitted)). An ALJ is required "to discuss the evidence and explain why he found that [a claimant] was not disabled at step three." *Clifton*, 79 F.3d at 1009. The claimant must point to objective medical evidence in the record that supports a finding that he or she meets a listing. *See Bernal v. Bowen*, 851 F.2d 297, 300 (10th Cir. 1988) (holding that "the claimant's descriptions, alone, are not enough to establish a physical or mental

impairment" and that it is the claimant's responsibility "to elicit [] direct clinical findings from his own physicians as to the presence" of Listings requirements).

In *Clifton*, the Tenth Circuit found error at step three where the ALJ failed to discuss the evidence and explain why he found that the claimant was not disabled. The conclusory finding of the ALJ was thus "beyond meaningful judicial review." 79 F.3d at 1009. In so finding, the *Clifton* court held:

> In the absence of ALJ findings supported by specific weighing of the evidence, we cannot assess whether relevant evidence adequately supports the ALJ's conclusion that appellant's impairments did not meet or equal any Listed Impairment, and whether he applied the correct legal standards to arrive at that conclusion. The record must demonstrate that the ALJ considered all of the evidence. . . .

*Id*. Accordingly, the court remanded for the ALJ to set out his specific findings and his reasons for accepting or rejecting evidence at step three." *Id*. at 1010.

As to the RFC, the ALJ must discuss why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." *Lawton v. Barnhart*, 121 F. App'x 364, 374 (10th Cir. 2005) (unpublished) (citing SSR 96-8p, 1996 WL 374184, at *7). The ALJ must also explain how any material inconsistencies or ambiguities in the case record were considered and resolved. *Id*. In developing the RFC, the ALJ must consider the limiting effects of all the claimant's impairments. 20 C.F.R. § 416.945; *see also Bowman v Astrue*, 511 F.3d 1270, 1272-73 (10th Cir. 2008). In doing so, the ALJ "'must address both the remaining exertional and nonexertional capacities of the individual." *Southard v. Barnhart*, 72 F. App'x 781, 784 (10th Cir. 2003). "The ALJ's findings must . . .be specific because the hypothetical questions submitted to the VE must state the

claimant's impairments 'with precision.'" *Armer v. Apfel*, 216 F.3d 1086 (Table), 2000 WL 743680, at *2 (June 9, 2000) (unpublished) (quotation omitted).

In this case, while the ALJ discussed at step three whether Plaintiff's mental impairments met or equaled the criteria of the relevant Listing, she did not discuss Plaintiff's physical impairments at that step or reference any Listings relevant to same. Thus, the ALJ failed to discuss or consider whether Plaintiff's severe impairments of rheumatoid arthritis, degenerative disc disease of the lumbar spine, and lupus met or equaled the relevant Listings. Further, she did not consider Plaintiff's documented clinical findings established lumbar stenosis and bulging discs. Plaintiff identified objective evidence that her impairments could meet or equal Listing 1.04A, Disorders of the Spine, which had to be properly evaluated by the ALJ.

The Commissioner argues, however, that any error was harmless as the ALJ considered Plaintiff's physical impairments at later steps of the evaluation. While this may be adequate in some cases, I find it was not adequate in this case and was not harmless error, as the medical evidence regarding the opinions was not properly evaluated.

On that issue, in assessing Plaintiff's RFC the ALJ discussed and rejected the opinions of orthopedic physician Dr. Jinkins that Plaintiff met Listing 1.04 (AR 518-520) and rheumatologist Dr. Caplan that Plaintiff met or equaled Listing 14.09 for inflammatory arthritis (*id.* 466-67). (AR 30.)[1] The ALJ also considered and rejected the

---

[1] The ALJ rejected the medical opinions regarding listing level impairments despite stating at the hearing on the issue of medical equivalency regarding Plaintiff's physical impairment that, ""I don't know if we have enough information for that ... But that's why I generally defer to the treating sources and you know, if they have an opinion to make, I find that that's the most efficient way and that's the most accurate." (AR 80.) Based on the rejection of this evidence, the ALJ found in her decision that "there is a

-6-

opinions of Dr. Jinkins in a Physical RFC Questionnaire in November 2011 opining as to Plaintiff's limited functional abilities. (*Id.* 513-17.) Additionally, she rejected the opinion of physician assistant Patrick G. Galaska in a Lupus RFC Questionnaire wherein he identified multiple limitations. (*Id.* 413-419.) The ALJ stated that she gave "little weight" to all of the above opinions, but it appears that she rejected them entirely. (*Id.* 30.) This is significant because when the vocational expert ["VE"] was provided an RFC with the limitations endorsed by Drs. Jinkins and Caplan (*id.* 77-78), the VE testified that such person could not perform any gainful work.

    I first find in connection with the opinions of Dr. Jinkins and Dr. Caplan that the ALJ did not consider whether they were treating physicians and, if so, did not follow the "sequential two-step inquiry" required in assessing treating sources' opinions. *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). Further, even if they were not treating physicians, the ALJ did not appear to give their opinions deference as required and/or weigh the relevant factors as to their opinions. *Id.*; *see also* 20 C.F.R. §§ 404.1527(d) and 416.927(d). The ALJ's errors in weighing the evidence impacts the findings at step three and the RFC, as well as the step five finding.

    I also find that the reasons given by the ALJ to give less weight to the opinions of Dr. Jinkins regarding the Listings and Plaintiff's functional impairments are not supported by the evidence. Thus, the ALJ gave little weight to his opinion because "the objective medical evidence does not support such severe functional limitations" and he

---

void in the actual record inconsistent ... to either meet or equal the medical listing 14.09." (*Id.* 30). Thus, the ALJ effectively relied on what she perceived was an omission; however, the absence of evidence is not evidence as to equivalence.

-7-

did not provide "any further rationale or explanation" for the opinion. (AR 30.) The ALJ also stated that "the medical record does not contain any contemporaneous treatment notes", and his opinion is "simply indicated on a form that consists largely of checked boxes." (*Id.*)

However, Dr. Jinkins noted the clinical findings and laboratory and test results that supported Plaintiff's impairments on the Listing form, including his examination and the MRI. (AR 519.) He also stated the clinical findings which supported his opinion on the Physical RFC Questionnaire. (*Id.* 513.) The ALJ improperly discounted these findings.[2] Moreover, the record is replete with objective findings documenting Plaintiff's impairments and chronic low back pain. (*See, e.g.,* 556-565—noting impairments and that Plaintiff is using walking aid for back pain, "progressive lower back is most troublesome", ongoing fatigue, "Feels shooting awful pain. . .", sciatica; *see also* 287, 304-05, 309-10, 311-12, 326, 327-30, 335, 375-378, 385, 388, 396, 408, 447-52, 454, 463, 475, 511.)[3]

The ALJ's brief conclusion that the objective medical evidence does not support such severe functional limitations on the part of Plaintiff is insufficient because it does not point to specific evidence the ALJ relied on in arriving at her conclusion. Thus, I am unable to meaningfully review her decision on this issue or to determine whether it is

---

[2] Moreover, the Tenth Circuit made clear in *Anderson v. Astrue*, 319 F. App'x 712, 723 (10th Cir. April 3, 2009) that check-the-box forms completed by a treating physician cannot be rejected even when they lack explanatory material.

[3] While some of these records were not in the transcript before the ALJ, the Appeals Council considered these documents. *See* Def.'s Resp. Br. at 11. Accordingly, they are part of the record to be considered in determining whether the ALJ's decision is supported by substantial evidence. *Martinez v. Barnhart*, 444 F.3d 1201, 1207–08 (10th Cir.2006)

supported by substantial evidence. *Crawford v. Colvin*, No. 12-5125, 2014 WL 1193336, at *2 (10th Cir. 2014) (finding that because the ALJ failed to identify with clarity how a doctor's opinions were inconsistent with the other record evidence, the court could not determine whether substantial evidence supports the ALJ's decision not to give the doctor's opinions controlling weight); *see also Krauser*, 638 F.3d at 1331 (ALJ's finding that doctor's questionnaire was inconsistent with other evidence was "stated in conclusory fashion, without reference to 'those portions of the record with which [the doctor's] opinion was allegedly inconsistent'. . . . It may be possible to assemble support for this conclusion from parts of the record cited elsewhere in the ALJ's decision, but that is best left for the ALJ himself to do in the proceedings on remand.") (quotation omitted). This is particularly problematic in this case given the objective evidence I cited that does lend support to Plaintiff's complaints.

The ALJ's finding that the medical evidence does not support such severe functional limitations is not only conclusory, but improper because it "impermissibly put the ALJ in the position of judging a medical professional on the assessment of medical data." *Thomas v. Barnhart*, 147 F. App'x 755, 759-60 (10th Cir. 2005). The alleged evidence cited in the ALJ's decision is not truly conflicting evidence, but rather is medical data which the ALJ determined, in her own lay opinion, to be conflicting. For example, the fact that during treatment Plaintiff was found to have normal range of motion, intact sensation, a negative bilateral straight leg raise, or that an MRI remained unchanged (AR 26-27) does not tend to prove that Plaintiff can lift twenty pounds rather than ten or determine her capacity for sitting, lifting, or standing. The ALJ chose improperly to speculate that such things refute Dr. Jinkin's restrictions. *See Langley v.*

*Barnhart*, 373 F.3d 1116, 1121 (10th Cir. 2004) ("'an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation, or lay opinion*'") (emphasis in original) (quoting *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002)).

I also find error with the ALJ's rejection of Dr. Jinkins' opinion on the basis that "the medical record does not contain any contemporaneous treatment notes", and his opinion is "simply indicated on a form that consists largely of checked boxes." (AR 30.) A physical examination of Plaintiff was performed by Dr. Jinkins' physician assistant Peter Brumlik on November 10, 2011, shortly before the Listing Questionnaire and the Physical RFC Questionnaire were filled out. (AR 590-91.) He diagnosed "Chronic low back pain" and "Sacroiliitis bilaterally" after finding, among other things, "exquisite tenderness over the SI joints bilaterally and palpation of the SI joints bilaterally duplicate the patient's pain." (*Id.*) Thus, the Questionnaires were supported by examination findings. While the Tenth Circuit has held that check-the-box forms, standing alone and unaccompanied by thorough written reports or persuasive testimony, are not substantial evidence, *Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987), that is not the situation here. Thus, it was improper for the ALJ to reject Dr. Jinkins' opinions on this basis. *Anderson v. Astrue*, 319 F. App'x 712, 723 (10th Cir. 2009).

The ALJ also failed to consider the fact that Dr. Jinkins' opinion is supported by the opinion of treating physician assistant Patrick Galaska. While the ALJ stated that Mr. Galaska is not an acceptable medical source, that did not allow her to simply reject his opinion on that basis. While an opinion from a nonacceptable medical source

cannot establish the existence of a medically determinable impairment, information from such sources "may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." SSR 06-03p, 2006 WL 2329939, at *2-4 (2006). Indeed, opinions from such sources may even be entitled to greater weight than that of a treating physician. *Id.* at *5.

Finally, I note that the only medical opinion the ALJ gave weight to was the opinion of Dr. Terry Jones, a psychiatrist. (AR 31.) Dr. Jones, however, conducted a mental status examination, not an assessment of Plaintiff's physical impairments and functional limitations related to same. (*Id.* 287-92.) The ALJ failed to state how she determined Plaintiff's RFC in connection with her physical impairments. This was also error that requires remand, as the RFC "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence. . . ." SSR 96-8p, 1996 WL 374184, at *7. Where the ALJ fails to point to specific evidence supporting each conclusion, the RFC findings are not supported by substantial evidence and a remand is required. *Conkle v. Astrue*, 297 F. App'x 803, 806 (10th Cir. 2008) (unpublished); *Southard v. Barnhart*, 72 F. App'x 781, 784-85 (10th Cir. 2003) (unpublished). Plaintiff's fatigue was also not considered by the ALJ in connection with the RFC.

Based on the foregoing, I find that this case must be remanded for a proper analysis of the evidence at step three. I also find that this case must be remanded so that the medical evidence can be properly weighed and the RFC properly supported. In assessing Plaintiff's RFC on remand, the ALJ is instructed to "consider the combined

effect of *all* medically determinable impairments, whether severe or not." *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013) (citing 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2)). This also includes nonsevere impairments, which must be considered in assessing the RFC. *Id*. The ALJ is also instructed to consider the new evidence submitted to, and considered by, the Appeals Council. *See Martinez*, 444 F.3d at 1208.[4]

### 2. The Step Two Decision

I also agree with Plaintiff that the ALJ did not consider all of Plaintiff's impairments at step two, and that this is another basis for remand. The Tenth Circuit has indicated that case law prescribes a very limited role for step two analysis." *Lee v. Barnhart*, 117 F. App'x 674, 676-77 (10th Cir. 2004). "While 'the mere presence of a condition or ailment' is not enough to get the claimant past step two, *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir.1997), a claimant need only make a 'de minimus' showing of impairment to move on to further steps in the analysis." *Id*.

Plaintiff is correct that the ALJ failed to assess the diagnoses of stenosis and lumbar disk herniation (which are in addition to her degenerative disc disease), ulnar neuropathy and/or carpal tunnel, urinary incontinence and obesity to determine whether

---

[4] For example, rheumatologist Dr. Caplan filled out an Arthritis RFC Questionnaire indicating that in an eight-hour workday, Plaintiff could sit for five minutes at a time for a total of two hours, stand for five minutes at a time for a total of less than two hours, and needed to get up and walk around for one minute every 10 minutes. (AR 573-78.) Dr. Caplan also indicated that Plaintiff could only use her arms, hands, and fingers for work tasks 10 percent of the day. (*Id*. 577.) Also, physical therapist David Wilber completed a questionnaire indicating that, in an eight-hour workday, Plaintiff could sit for 20 minutes at a time for a total of less than two hours, stand for five minutes at a time for a total of less than two hours, and needed to get up and walk around for three minutes every 15 minutes. (*Id*. 585-89). Mr. Wilber also indicated that Plaintiff could only use her arms, hands, and fingers for work tasks from 10 to 20 percent of the day. (*Id*. 588.) I find this evidence is new, material, and chronologically relevant.

they are severe impairments. Even if they are not severe, they may well impact Plaintiff's RFC. For example, Plaintiff references manipulative limitations imposed by her doctors which were not considered by the ALJ.

I also note that while the ALJ purportedly gave "great weight" to the opinion of Dr. Jones, the ALJ failed to assess whether the chronic pain syndrome he diagnosed was severe or to consider the impacts of this syndrome on Plaintiff's RFC. (AR 291.) This also was error. *See Carpenter*, 537 F.3d at 1265 (the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence"). Without a proper assessment at step two, all of the remaining steps of the sequential evaluation may be flawed.

### 3. Plaintiff's Credibility

Finally, Plaintiff argues, and I agree, that the ALJ erred in assessing her credibility. Thus, a remand is required on this basis as well. In so finding, I acknowledge that "'[c]redibility determinations are peculiarly the province of the finder of fact.'" *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quoting *Diaz v. Sec. of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990)). "However, '[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'" *Id.* (quotations omitted).

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent" with the RFC assessment. (AR 28.)

I find that some of the ALJ's reasons for her assessment of Plaintiff as not being fully credible are not supported by substantial evidence.

For instance, the ALJ found that Plaintiff's "reported limited daily activities" were outweighed by other factors, such as the fact that Plaintiff "was apparently able to care for children at home, which can be quite demanding both physically and emotionally." (AR 28.)  There was nothing in the evidence, however, that supported that finding.  At nine and thirteen years of age in 2003 (*id.* 28-29), there is no reason to believe that the children were not only relatively self-sufficient in personal care, but also able to help out at home.  And by the October 2011 hearing, Plaintiff's children were 17 and 21 years of age.  Plaintiff testified that her 17 year-old daughter and 24 year-old niece shopped and prepared meals for her.  (*Id.* 44, 61.)  Based on the foregoing, I find that the ALJ's reliance on Plaintiff's care of the children as being demanding both physically and emotionally is not supported by the evidence.  *Martinez v. Astrue*, 422 F. App'x 719, 727-28 (10th Cir. 2011) (finding nothing in the record to support the ALJ's finding that claimant's care for his daughter was "quite demanding both physically and emotionally").

Additionally, the ALJ stated that Plaintiff reported pain with normal daily activities, but she was still able to do them.  (AR 29) (citing Ex. 19F—a report of Dr. John H. Bissell.)  The ALJ is selectively applying the evidence on this issue.  While Dr. Bissell did attribute this statement to Plaintiff, Plaintiff testified to significant limitations in her daily activities, and that her mother, daughter and niece help her.  (AR 60-63.)  "[T]he lack of consistency between an individual's statements and other statements that he or she has made at other times does not necessarily mean that the individual's statements

are not credible." SSR 96-7p, 1996 WL 374186, at *5.  The ALJ was still required to consider Plaintiff's testimony and all the evidence on this issue.  Moreover, activities such as occasionally performing household chores or preparing simple meals in a microwave oven do not necessarily reflect on Plaintiff's ability to sustain work throughout a regular schedule.  The Tenth Circuit is clear that an ALJ may not rely on minimal daily activities as substantial evidence that a claimant does not suffer disabling symptoms.  *Thompson v. Sullivan*, 987 F.2d 1482 (10th Cir. 1993); *Frey*, 816 F.2d at 516-17.

The ALJ also found that Plaintiff "has not been entirely compliant in following treatment advice, which suggests that the symptoms may not have been as limiting as the claimant has alleged." (AR 29.)  She noted in that regard that Plaintiff did not follow the advice of her doctors to quit smoking and lose weight.  (*Id.*)  There is no evidence, however, that any physician had actually prescribed any smoking cessation or weight loss treatment.  A treating source's statement that an individual should lose weight or has been advised to get more exercise is not prescribed treatment.  SSR 02-1p, 2000 WL 628049, at * 9.

The ALJ also relied on the findings noted in her RFC assessment that "medications have been relatively effective in controlling the claimant's symptoms." (AR 29.)  However, I find that the ALJ improperly picked and chose among medical reports.  *See Carpenter v. Astrue*, 537 F.3d 1264, 1265 (10th Cir. 2008).  The evidence showed that while epidural injections and prescribed medications were helpful, the effects were temporary and not long-lasting.  Indeed, the record is replete with complaints of chronic pain by Plaintiff and objective findings supporting these complaints, including a

-15-

diagnosis of a chronic pain syndrome. (AR 375-78, 385, 388, 396, 408.) This evidence were not adequately considered by the ALJ. She also did not consider that Plaintiff sought several modalities of treatment and used narcotic medications to manage her chronic pain, with side-effects such as tiredness and grogginess. (AR 57-58, 203.)

In short, the ALJ appeared to completely discount Plaintiff's complaints of pain, and did not consider whether and how her pain impacted her ability to work. I find this was error, and that the ALJ did not conduct a proper pain analysis. *See Carpenter v. Astrue*, 537 F.3d 1264, 1268 (10th Cir. 2008) (finding that the ALJ's pain analysis was "improper boilerplate because he merely recited the factors he was supposed to address and did not link his conclusions to the evidence or explain how Mrs. Carpenter's repeated attempts to find relief from pain, and all the drugs she has been prescribed for pain, resulted in a conclusion that she is unlimited in any regard by pain or the side effects from her pain medication"); *see also Harrison v. Shalala*, No. 93-5238, 1994 WL 266742, at *5 (10th Cir. June 17, 1994) ("[i]f the ALJ finds that plaintiff's pain, by itself, is not disabling, that is not the end of the inquiry. . . .The [Commissioner] must show that 'jobs exist in the national economy that the claimant may perform *given the level of pain [she] suffers*.'"). This should also be addressed on remand.

III. CONCLUSION

Based upon the foregoing, I find that the ALJ erred in her assessment at steps two and three and in connection with the RFC. The ALJ did not adequately weigh the medical evidence, and erred in assessing Plaintiff's pain and credibility. These errors impact the findings at step five. Accordingly, it is

ORDERED that this case is **REVERSED AND REMANDED** to the Commissioner for further fact finding as directed in this Order pursuant to sentence four in 42 U.S.C. § 405(g).

Dated: September 22, 2014

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Senior United States District Judge